```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

```
TERRANCE M. TARTT            :
by JEANNIE GASTON,           :
                             :
     Plaintiff,              :
                             :
v.                           :    CIVIL ACTION 05-0434-M
                             :
JO ANNE B. BARNHART,         :
                             :
     Defendant.              :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff[1] seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income for Children (hereinafter *SSI*). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). Oral argument was heard on March 20, 2006. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

---

[1]Though this action was brought by Jeannie Gaston for her son, Terrance M. Tartt, this Court will refer to Tartt as the Plaintiff.

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born June 17, 1994. At the time of the most recent administrative hearing, Tartt was ten years old and had completed a fourth-grade education (Tr. 627). In claiming benefits, Plaintiff alleges disability due to chronic asthma, chronic sinusitis, allergic rhinitis, sickle cell trait, history of seizure disorder, speech problems, and depression (Doc. 12, p. 2).

The Plaintiff filed an application for SSI on August 28, 1996 (Tr. 45-46). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Tartt had severe impairments but not any that met or equaled the Listing of Impairments (Tr. 10-18; *see* Tr. i).[2] Plaintiff requested review of the hearing decision (Tr. 8-9; *see* Tr. i) by the Appeals Council, but it was denied (Tr. 4-5; *see* Tr. i). Tartt filed an

---

[2]For some unexplained reason, this decision by the ALJ, Plaintiff's request for review of that decision, and the Appeals Council's decision do not appear in this record (*see* Tr. i).

action in this Court, seeking review of the ALJ's decision; this Court reversed the decision of the ALJ and remanded the action to the Social Security Administration for a new hearing for the taking of additional medical evidence to be considered under the, then, newly-promulgated regulations.  *Tartt v. Barnhart*, Civil Action 02-0668-P-M (S.D. Ala. October 21, 2003) (found at Tr. 412-23).

On remand, following two hearings, the ALJ determined that although he had severe impairments, Tartt did not meet or equal the requirements for any Listing (Tr. 351-63).  The Appeals Council denied review of that decision (*see* Doc. 12, p. 2) and Plaintiff, again, seeks review in this Court.

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Tartt alleges that:  (1) He meets or equals the requirements of Listing § 103.03(B); and (2) the ALJ should have called a medical expert (hereinafter *ME*) (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 15).

Plaintiff claims that he meets the requirements of Listing § 103.03B which requires that a claimant have asthma attacks[3]

---

[3]Attacks are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.  Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.  The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs.  For asthma,

>           in spite of prescribed treatment and
>           requiring physician intervention, occurring
>           at least once every 2 months or at least six
>           times a year.  Each inpatient hospitalization
>           for longer than 24 hours for control of
>           asthma counts as two attacks, and an
>           evaluation period of at least 12 consecutive
>           months must be used to determine the
>           frequency of attacks.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 103.03B

(2005).  The medical evidence of record follows.

On February 13, 1998,[4] Tartt was seen at the University of

South Alabama Children's and Women's Hospital (hereinafter

*Children's*) for wheezing, *inter alia*,[5] though he had had an

Albuterol[6] treatment earlier in the day; the doctor prescribed

---

the medical evidence should include spirometric results obtained
between attacks that document the presence of baseline airflow
obstruction."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00C
(2005).

   [4]Though Plaintiff initially claimed disability as of February 1,
1996 (Tr. 45), Tartt has since stated that "[a]s the asthma listing
requires an evaluation period of at least 12 consecutive months to
determine the frequency of asthma attacks, the following review is
limited to 1998 forward" (Doc. 12, p. 6).

   [5]Though Plaintiff was also treated for fever and vomiting during
this hospital visit, the Court will focus only on the treatment of
asthma-related impairments for this and all other treatment records.
Although Plaintiff's Counsel argued at the hearing that the Mother had
testified that fever and vomiting were symptoms Tartt experienced as
part of an asthma attack, Counsel did not reference that testimony in
the Proposed Report and Recommendation and the Court has been
unsuccessful in finding it on its own.

   [6]*Albuterol* is the generic name for an inhalation aerosol used to
prevent and relieve "bronchospasm in patients with reversible
obstructive airway disease, and for the prevention of exercise-induced
bronchospasm."  *Physician's Desk Reference* 2656 (52nd ed. 1998).

nebulizer treatment (Tr. 348).  On April 14, 1998, Plaintiff was seen at the University of South Alabama Children's Medical Center (hereinafter *USACMC*) for an attack of wheezing in spite of earlier home treatment; an inhaler was prescribed and a suggestion was made that Tartt, hopefully, could be weaned off the Albuterol (Tr. 257).  A month later, on May 13, 1998, Plaintiff was seen at USACMC after two days of wheezing without relief from Albuterol; he was described as "active" and in no acute distress (Tr. 272).  In a follow-up treatment two weeks later, it was noted that Tartt had experienced some wheezing as recently as the previous night; he was to continue home treatment (Tr. 271).

    On September 11, 1998, Plaintiff, who was described as alert and playful, was seen at USACMC for possible wheezing; his lungs were clear and he was instructed to continue using the nebulizer every four-to-six hours (Tr. 267).  Two days later, Tartt was taken to Children's for wheezing and congestion; he was described as alert, talkative, smiling, and in no acute distress (Tr. 346).  Plaintiff's wheezing was described as mild; following medication, Tartt was told to increase his Albuterol to every four hours every two days (*id.*).  On January 19, 1999, Plaintiff was treated for mild wheezing at Children's and told to take Albuterol every six hours for three days and then four-to-six hours as needed (Tr. 263).  On February 11, Tartt was seen for wheezing and

coughing at USACMC in spite of four or five Albuterol treatments in the previous twenty-four hours; the doctor noted that Plaintiff was in no acute distress and that his lungs were clear bilaterally before prescribing cough medicine (Tr. 261).  On March 13, 1999, Tartt was seen at Children's for complaints of coughing and wheezing for the previous few days; the doctor noted prolonged wheezing and admitted Plaintiff overnight for observation, diagnosing him to have sinusitis (Tr. 342).  Tartt was seen again on March 17 and 23 for follow-up; on the latter date, his lungs were clear and the wheezing resolved (Tr. 341, 259).  On March 29, 1999, Plaintiff was taken to USACMC, but his lungs were clear and there was no wheezing; Albuterol was to be used as needed and Singular was added to the medical regimen (Tr. 258).

   On May 28, 1999, Plaintiff went to Children's for congestion and nasal drainage; the doctor diagnosed sinusitis and prescribed an antibiotic (Tr. 338).  Two weeks later, Tartt had increased congestion and coughing for two-to-three days, but the doctor found his lungs clear and Plaintiff to be in no acute distress (Tr. 337).  On September 17, 1999, Plaintiff had a croupy cough but his lungs were clear, there was no wheezing, and he was in no acute distress; a prescription was given for Albuterol to be used at home (Tr. 251).  An emergency room examination on September 20 again revealed clear lungs; Tartt was told to use his nebulizer

as needed for wheezing (Tr. 334).  Three days later at a follow-up visit, the doctor noted an occasional cough and that Plaintiff's lungs were clear (Tr. 250).

On January 7, 2000, Plaintiff was evaluated at USACMC and found to have clear lungs (Tr. 319).  On March 31, Tartt complained of a runny nose, sore throat, post-nasal drip, and occasional wheezing; his lungs were clear and there was no wheezing (Tr. 314).  The Court notes that there is more medical evidence but will conclude the summary of it at this point.

The ALJ reviewed the evidence and determined that Tartt's "asthma [had] not been of the frequency or severity required to meet or medically equal Listing 103.03" (Tr. 357).  In reaching this decision, the ALJ noted that although there were numerous doctor and hospital visits, they were not all asthma-related and those that were did not demonstrate "constant care and treatment" (*id.*).

In his brief before this Court, Plaintiff set out the relevant medical evidence and made the following argument:

> The records document more than six asthma attacks, despite treatment, during a 12-month. [sic]  From February of 1998 through February 1999 the Plaintiff had at least seven asthma attacks (February 13, 1998; April 14, 1998; May 13, 1998; September 11, 1998; September 13, 1998; January 19, 1999; and February 11, 1999).  The medical records document that he had at least five asthma attacks during the next year (March 17, 1999; September 20, 1999; January 7, 2000; March 8,

>    2000; March 31, 2000).  And, finally, the
>    medical records document that he continued
>    having asthma attacks throughout the period
>    at issue.

(Doc. 12, pp. 11-12).

The Court finds that Tartt's arguments are unsupported by the medical evidence as the degree of intervention required for most of the examinations was minimal, if anything at all, with regards to asthma.  Specifically, the Court noted no treatment requiring "intravenous bronchodilator" or "prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00C (2005).  Though Plaintiff had many complaints of wheezing and coughing and sought intervention for it, the doctors routinely found only mild wheezing, if any, and clear lungs bilaterally.  The Court finds that Plaintiff has failed to demonstrate six different occasions during a twelve-month period of time where the necessary level of medical intervention was required to treat TARTT.  Plaintiff has failed to demonstrate that he meets the requirements of Listing 103.03B.

TARTT has also argued that although he may not meet the Listing, his impairments *equal* the Listing.  The Court notes that Social Security Regulations indicate that the Social Security Administration will consider the medical evidence available for a claimant and make a determination as to whether it is medically

equivalent to a listed impairment even though it does not meet the requirements for a specific listing.  20 C.F.R. § 416.926 (2005).  However, the burden is on Plaintiff to demonstrate specific medical findings which describe an equivalency to the Listing.  *Wilkinson on behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

As noted earlier, the ALJ found that the frequency and severity of Tartt's asthma attacks did not equal the Listing.  The ALJ went through the domain analysis and found that Plaintiff did not have extreme limitations in any one of those domains or marked limitations in any two of the domains (Tr. 360-62).[7]  Again, the Court finds substantial support for the ALJ's decision that Tartt's impairment does not equal the Listing.  Though Plaintiff has demonstrated that asthma is an impairment requiring more than home intervention from time-to-time, it does not reach the magnitude contemplated by the Listing.

Tartt also claims that the ALJ should have called an ME to testify regarding Plaintiff's asthma.  Plaintiff's Counselor admitted at oral argument, however, that there are no firm rules regarding the use of an ME as it is a discretionary duty.  *See* 20 C.F.R. § 416.927(f)(2)(iii) (2005) ("Administrative law judges *may* also ask for and consider opinions from medical experts on

---

[7]Plaintiff has not specifically challenged the ALJ's findings with regard to the domain analysis, so the Court will not go through that analysis here.

the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed").

The ALJ found "that the testimony of a medical expert was not required" (Tr. 354).  Though he did not explain this decision, the Court finds substantial support for it.  The Court does not find that the medical evidence demonstrated that Tartt's asthmatic condition was severe or frequent enough to warrant the need for an ME to testify whether Plaintiff had equaled the Listing requirements.

Plaintiff has raised two different claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate order.

DONE this 21st day of March, 2006.

                                       s/BERT W. MILLING, JR.
                                       UNITED STATES MAGISTRATE JUDGE